## WILSON v. FEDERAL TAX CO.

No. 23350.   Nov. 19, 1935.

Rehearing Denied February 18, 1936.

Suits & Disney, for plaintiff in error.

Snyder, Owen & Lybrand, for defendant in error.

PER CURIAM. The parties will be referred to in this opinion as they appeared in the court below. Plaintiff instituted its action in the district court of Oklahoma county, wherein it sought judgment against the defendants on a promissory note executed by the defendants Anna E. Wilson and James Alexander Wilson on January 24, 1929, said note being originally made payable to the defendant Atlas Mortgage & Bond Company, and assigned to the plaintiff on March 19, 1929. Plaintiff also sought a foreclosure of a mortgage securing said note executed by the defendants Anna E. Wilson and her husband, said mortgage covering certain lands in Oklahoma county.

Default judgment was entered in favor of the plaintiff and against the defendants. Said judgment thereafter became final as to the defendants James Alexander Wilson and Atlas Mortgage & Bond Company, and no appeal therefrom was prosecuted by said defendants. At a later date, however, said judgment was vacated as to the defendant Anna E. Wilson, and she fi'ed her answer and cross-petition, which will be referred to hereinafter. The trial resulted in a judgment in favor of the plaintiff and against the defendant Anna E. Wilson for the amount

sued for and a further decree of foreclosure of the mortgage. Motion for new trial was filed and overruled, and the case comes regularly on for review by this court.

Certain facts are disclosed without conflict by the pleadings of the parties and the undisputed evidence. The note executed by the defendant acknowledged the receipt of the principal sum, in consideration of which the defendant promised to pay the sum of $23.19, the same being principal payment on "Secured Investment Certificates" of Atlas Mortgage & Bond Company, the payee of the note, and the further sum of $29.61, representing interest at 4 per cent. per annum on the principal amount loaned and "insurance premiums," all of said items aggregating the sum of $52.80 per month, which was to be paid "according to the face of said certificates" on the 5th of each and every month until said certificates should be matured according to the terms thereof, or until said loan should be otherwise sooner canceled or discharged. Said note further recited that it was secured by a real estate mortgage of the same date, and by assignment of said secured investment certificates.

By the terms of the mortgage, the Atlas Company was given a lien to secure the payment of this promissory note upon certain real estate and upon the two secured investment certificates. According to its terms, it was given in consideration of the principal sum, and for the purpose of securing the payment thereof. The obligation of the mortgagors as therein set out was to pay the sum of $52.80 per month until the certificates should be matured, and contained other usual conditions of real estate mortgages. The note, mortgage, secured investment certificates, and all rights thereunder were assigned to the plaintiff by the Atlas Company as collateral security for a loan made by the plaintiff to the Atlas Company.

The secured investment certificates were introduced in evidence and are set out in the record. One of these certificates was issued to Anna E. Wilson, and the other to her husband, James Alexander Wilson. Certificate No. 101 recited in part as follows:

"In consideration of three hundred seven and 20/100 dollars, the receipt of which is hereby acknowledged, and of the payment of the sum of $25 on or before the 5th day of each month hereafter for the period of one hundred and twenty months (120) consecutively, the Atlas Mortgage and Bond Company (hereinafter called the Company) promises to pay at its Home Office in Oklahoma City, Oklahoma, the sum of three thousand four hundred sixty-eight Dollars, less any indebtedness on account of this certificate to Mrs. Anna E. Wilson (hereinafter called the Investor) ; and to perform during the life of this certificate the further covenants and agreements hereinafter contained."

Said certificate contained further provisions that the Atlas Company, during the life of the contract and so long as it should be kept in force by the payments of the installments as agreed, would pay the life insurance premiums to become due under a policy of life insurance on the life of Anna E. Wilson in the sum of $2,000. During the life of the certificate and so long as the same was kept in force by the payment of the monthly sums agreed upon, the certificate was to have a cash value available to the investor according to a table contained in the certificate. This cash value was available to the investor upon his exercising one of three options set out in the certificate. It would seem useless to set out these option provisions in full detail, since the evidence in this case does not show that either of them was ever exercised, and, therefore, the investor was never entitled to the cash value of these certificates, either in cash, as a credit on her indebtedness, or otherwise. The Atlas Company also had various options to call in and redeem said certificate, which the evidence does not show that it ever exercised.

Certificate No. 102, issued to James Alexander Wilson, was in the same form except that the monthly payments thereon were in the sum of $27.20, and the value of said certificate at maturity was scheduled at the sum of $3,742.

Construing all these instruments together, therefore, it appears that the defendants, Wilsons, borrowed from the Atlas Company the sum of $4,000. This sum was not to be paid back directly, but through the medium of the secured investment certificates. The mortgagors were to pay 4 per cent. interest on the amount borrowed, but the balance of their payments were to be paid on the secured investment certificates and as life insurance premiums. It was apparently contemplated that when the value of the secured investment certificates was equal to the amount due on the note and mortgage, the certificates would be canceled and their proceeds applied on the loan. It appears, however, from the undisputed evidence, that the sum of $633.60 was retained from the proceeds of the loan and credited on the certificates as the initial payments on said cer-

tificates. Thereafter the defendant paid the sum of $23.19 on the principal of said certificates, the sum of $14.80 as interest, and the sum of $14.81 as insurance premium for 13 months, the last payment being made in March, 1930.

The answer of the defendant Anna E. Wilson set up various contentions which may be summarized as follows: (1) General denial; (2) denial that plaintiff was owner and holder of the note and mortgage, and charging that if plaintiff was the owner and holder of said note and mortgage, the same was taken with full notice of defenses; (3) the lender was without authority to assign the note and mortgage to plaintiff; (4) the Atlas Company was not qualified to do business in Oklahoma; (5) the Atlas Company had not secured authority from the State Bank Commissioner to enter into the contract and transaction with the defendant; (6) that the note was not in default; (7) no consideration and failure of consideration; (8) that the note and mortgage were void on account of Atlas Company's failure to comply with the laws of the state of Oklahoma; (9) the note and mortgage were procured through fraud; (10) the contract was not performed by the plaintiff and its assignor, and the defendants were thereby released; and (11) particularly, that the plaintiff and its assignor failed to pay the life insurance premiums as agreed in the contract and had permitted the lapse of said policy. For cross-petition the defendant alleged the improper advertisement of the property for sale less than six months after judgment, and damages sustained thereby; and the improper conduct of the receiver appointed in this case by the court which was alleged to have damaged the defendant.

It appears to be undisputed that the Atlas Company retained from the proceeds of the loan the sum of $633.60, which was applied as credits on the two certificates. Under the terms of the two certificates, these initial payments were acknowledged and the defendants, Wilson, agreed to make the monthly payments thereafter. However, a passbook was issued to the defendant Anna E. Wilson, which was introduced in evidence, and which passbook under the column bearing the heading "Month Number" bore the notation 1 to 12 opposite the payment of the sum of $633.60. Thereafter the defendant's regular monthly payments are entered opposite numbers 13, 14, and so on, consecutively, to number 25. On the strength of this passbook the defendant contended that the initial payment represented payment for the first twelve months, and that following this view the defendant had made her payments for 25 months and was not in default at the time that this suit was brought. The plaintiff contended that the defendant was required to make monthly payments each and every month immediately following the initial payment and was therefore in default at the time the action was brought.

The defendant first contends that the court below erred in refusing a trial by jury. It appears that when the case came on for trial, the defendant requested a trial by jury, and after some colloquy between the court and counsel, the court said:

"I am going to deny a trial by jury, but if in the trial of the case it develops that any question of fact for a jury to pass on or that should have been passed on by a jury, I will just have to undo what I have done, and give the defendant an exception to the ruling of the court."

Thereafter the defendant insisted that the court rule definitely on the jury demand, and the court overruled the demand for a jury trial.

We are of the opinion that the defendant's position in this regard is not well taken. It is no doubt true that the right of one of the parties to a jury trial is ordinarily determined on the pleadings, and that the defendant alleged some grounds of defense in her answer, as hereinabove referred to, which would ordinarily entitle her to a jury trial.

In addition to the evidence hereinabove set out, it was stipulated that the Atlas Company had never been issued a certificate of authority from the State Bank Commissioner authorizing it to engage in the business of disposing of contracts on the partial payment plan. The defendant established by the testimony of an employee of the Mid-Continent Life Insurance Company that the two insurance policies on the lives of Anna E. Wilson and James Alexander Wilson were lapsed for the nonpayment of premiums between December 29, 1929, and January 16, 1930, in the case of Anna E. Wilson, and between January 11 and January 17, 1930, in the case of James Alexander Wilson. However, the testimony showed that these policies were reinstated and thereafter were kept in full force and effect until the institution of this foreclosure action. It was further developed in the evidence that this was the only mortgage taken by Atlas Mortgage & Bond Company, and it follows necessarily therefrom that this was the only transaction of its

kind in which the Atlas Company was involved. Under these circumstances, we are of the opinion that no question was raised on the evidence which could have necessitated a submission to a jury. The defendant did not ask for the application of any credits for payments on the certificate to be applied on the note, and therefore there was no controversy as to the amount due. The facts were undisputed upon the question of the default and the failure of the Atlas Company to secure a certificate of authority from the State Bank Commissioner. No competent evidence was introduced to sustain the allegation of damages in the cross-petition of the defendant. Therefore, we find that no prejudicial error was committed in the refusal of the defendant's request for a jury trial. If a jury had been impaneled, the trial court would have been compelled on the evidence introduced to have directed a verdict. Therefore, no useful purpose would be served in having this case again submitted to the trial court.

This conclusion is sustained by a recent decision of this court in the case of Oxley et ux. v. Southland Life Insurance Company, 159 Okla. 287, 15 P. (2d) 43. The syllabus of the court is as follows:

"Where a jury is denied defendants in an action properly triable to a jury, the action of the court in this respect will be held to be harmless when it appears from the evidence that defendants had no legal defense to plaintiff's cause of action."

The defendant next urges that this action was prematurely brought, due to the fact that there was no default in payments by the defendants. This contention is based upon the fact that the passbook introduced in evidence showed the initial payment opposite month number 1 to 12 and thirteen monthly payments thereafter. The defendant contends that this evidence shows that the payments had been made for 25 months and were not in default when the action was instituted. This argument overlooks the plain language of the investment certificates which acknowledge the initial payment and require payment on the certificates each month thereafter. The contract was performed for thirteen months, or until the month of March, 1930. We know of no reason why the parties could not contract, as they did in this case, for payments to be one year ahead at all times, provided only that the contract should not amount to a scheme to charge a greater rate of interest for use of money than allowed by law, and no contention is made that this was the

situation in this action. We are of the opinion, therefore, that the payments of the defendant were in default at the time this action was instituted by the plaintiff.

We have already called attention to the fact that the lapse of the insurance policies did not occasion any damage to the defendant. It is true that the defendant had paid for this insurance twelve months in advance by reason of the initial payment, but the investment certificates only required that the insurance be kept in force as long as the defendant continued to make the payments provided for. The defendant would have been entitled to some credits against this loan by reason of these advance payments if she had elected to claim same, but did not see fit to do so.

The defendant next contends that the contract sued upon is illegal and unenforceable by reason of certain statutes of the state of Oklahoma. The defendant cites in this connection sections 9857, 9860, 9861, and 9869, Oklahoma Statutes 1931. These statutes purport to prohibit all persons, firms, or corporations from "doing business" of selling contracts upon which to predicate a loan at some future date; regulate the plans and methods of "conducting business" by such concern; require a permit to be secured by persons "engaging in the business," as above referred to; and provide for punishment of persons violating such acts.

We do not deem it necessary to decide the questions presented in the defendant's briefs with reference to the effect of the statutory provisions. In our opinion they are analogous to statutes regulating and prohibiting the doing of business by a foreign corporation. The expressions "doing business," "engaging in business," "conducting business," have a well-defined meaning and must have been used by the Legislature in enacting the sections of our statutes relied upon by the defendant with this well-defined and established meaning in view.

The rule is well established that one who is seeking to avoid the enforcement of a contract upon the ground that the other party is doing business in the state without authority must allege and prove facts to sustain this defense; in other words, that this is an affirmative defense. See Fletcher's Encyclopedia of Corporations, vol. 18, sec. 8630; White Sewing Machine Co. v. Peterson, 23 Okla. 361, 100 P. 513; Bailey v. Parry Mfg. Co., 59 Okla. 152, 158 P. 581; Weber Chimney Co. v. Blackwell Hospital Company, 111 Okla. 62, 238 P. 186.

It has been further held that mere isolated or individual transactions of a forbidden kind do not constitute the doing of business within the meaning of such statutes. In the case of Denison v. Phipps, 87 Okla. 299, 211 P. 83, we used this language:

"* * * By the phrase 'transacting business' is meant the doing or performing of a series of acts which occupies the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure; but the doing of a single act pertaining to a particular business would not be considered carrying on, transacting, or doing business as contemplated in said sections."

See, also Fuller v. Allen, 46 Okla. 417, 148 P. 1008; Barnett v. Aetna Explosives Company, 96 Okla. 132, 220 P. 874.

We construe these decisions to mean that the phrase "doing business" and the variations of same as used in the statutes contemplate a series of acts or transactions and not a mere isolated transaction as involved in this case. We do not believe that the Legislature intended to apply the phrases in any different sense in the statutes relied upon by the defendant in this case.

The evidence in this case does not disclose that the Atlas Company was following a plan or method of doing business along the lines prohibited by the above-mentioned statutes, even if we should accept the statutory construction urged by the defendant. On the contrary, the evidence discloses that this was the only mortgage ever taken by the Atlas Company upon this plan. We must, therefore, conclude that the defendant's argument in this respect is also without merit.

Finding no substantial error in the record of this case, the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Gentry Lee, A. A. Kleinschmidt, and Edmund Lashley in the preparation of this opinion. These attorneys constituted an advisory committed selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lee, and approved by Mr. Kleinschmidt and Mr. Lashley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur