652 F.2d 424
 Blue Sky L. Rep. P 71,645
W. D. UPTON, Plaintiff-Appellee Cross-Appellant,
v.
TRINIDAD PETROLEUM CORPORATION, a corporation, Charles D.
Beard, Jr., an Individual, Defendants-Appellants
Cross-Appellees.
 No. 79-2109.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Aug. 3, 1981.
 S. P. Keith, Jr., Birmingham, Ala., for defendants-appellants cross-appellees.
 Ritchie, Rediker & Warren, J. Michael Rediker, Birmingham, Ala., for plaintiff-appellee cross-appellant.
 
 
 1
 James T. Pitts, Chief Counsel, Harvey L. Bell, Little Rock, Ark., for amicus curiae Arkansas Securities Dept.
 
 
 2
 Frank E. Marley, Jr., Oklahoma City, Okl., for amicus curiae Oklahoma Dept. of Securities.
 
 
 3
 Thomas R. McAlpine, Montgomery, Ala., Benjamin J. Isaacs, Frankfort, Ky., for amicus curiae State of Ala.
 
 
 4
 Appeals from the United States District Court for the Northern District of Alabama.
 
 
 5
 Before JONES, FAY and HENDERSON, Circuit Judges.
 
 HENDERSON, Circuit Judge:
 
 6
 The appellee, W. D. Upton, filed this action against appellants Trinidad Petroleum Corporation (hereinafter referred to as "Trinidad") and Charles D. Beard, Jr., on February 24, 1976 in the United States District Court for the Northern District of Alabama. The complaint asserted violations of the registration provision of the federal securities laws, 15 U.S.C.A. § 77e, the Alabama securities registration requirement, Code of Alabama (1940), tit. 53, § 30; several antifraud provisions of the federal securities acts, 15 U.S.C.A. §§ 78j(b), 78o(c), and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5; and the antifraud provisions of the Alabama "blue sky" law, Code of Alabama (1940) tit. 53, § 45. After a non-jury trial on the merits, the district judge issued a memorandum opinion on which he held that the appellants violated the terms of both the state and federal securities registration laws; that Upton was entitled to recover for the state registration violation; and that the cause of action for the federal registration breach was barred by the applicable one-year statute of limitations, 15 U.S.C.A. § 77m. The district judge also concluded that the appellants had clearly violated the antifraud provisions of the federal securities acts and that, although a one-year limitations period applied, the tolling doctrine preserved these claims.[1] No independent recovery was allowed for the federal antifraud violation, however, because Upton was entitled to equivalent remedies for the state registration violation and, in addition, an award for attorney's fees. On appeal, Beard and Trinidad focus primarily on the district court's determination that they violated the state registration provision. As a precautionary measure, Upton cross-appeals with respect to the court's statute of limitations rulings. We affirm. 468 F.Supp. 330.
 
 
 7
 The facts of this case are somewhat complex, but may be slightly condensed for our present purposes. Trinidad is a Louisiana corporation with its principal place of business in Birmingham, Alabama. In 1974, Beard, Trinidad's president and sole stockholder, began offering interests in an oil well to be drilled in Texas known as Wallace Natural Gas Well No. 1 (hereinafter referred to as "Well No. 1"). Beard's offers were accepted by thirteen people. Four of these investors resided in Alabama, three were residents of Luxembourg, and the remainder lived in various states. Shortly after Well No. 1 was completed, Trinidad began offering interests in Wallace Natural Gas Well No. 2 (hereinafter referred to as "Well No. 2"). Each investor in Well No. 1 was automatically invited to invest in Well No. 2. All but two of the original thirteen offerees accepted. A 1% interest was also given to one of Beard's employees as compensation.
 
 
 8
 On December 16, 1974, Upton and Beard met in Trinidad's office. Beard told Upton that the chances that Well No. 2 would be successful were excellent. Upton accepted Beard's offer to sell him a 5% interest in the well for $15,000.00.
 
 
 9
 Trinidad's 75% interest in the lease on the tract of land where Well No. 2 was drilled was originally acquired by Beard in the name of his wholly-owned corporation, Beard & Associates. This corporation sold the lease interest to Trinidad for a $3,500.00 profit. Trinidad, in turn, recouped its entire cost for the lease from Upton and the other investors, and still retained 25% of the total interest in Well No. 2.
 
 
 10
 On November 25, 1974, Trinidad signed a "turnkey" contract with an independent drilling company which fixed the price for drilling Well No. 2 at $72,000.00. Trinidad's total expense for drilling Well No. 2, taking other related costs into account, was approximately $81,500.00. The aggregate amount collected from the investors in this well was $147,000.00. Each investor had been provided a contract which specified that his money was to be applied to "drilling costs only."[2] Trinidad did not refund to the investors any of the excess money it had collected. Rather, it apparently used the surplus to take care of its normal operating expenses.
 
 
 11
 The district court found that Beard failed to disclose to Upton the following facts:
 
 
 12
 (i) that in 1964 he and Trinidad had been permanently enjoined (by a federal district court in Louisiana) from selling unregistered securities;(ii) the price of the turnkey drilling contract;
 
 
 13
 (iii) that the price of the turnkey drilling contract was substantially less than the amount of money being raised from investors;
 
 
 14
 (iv) that the administrative costs and general overhead costs of Trinidad that Beard had attributed to Wallace Well No. 2 would be taken out of the money supplied by the investors;
 
 
 15
 (v) that through an affiliated company, Charles D. Beard & Associates, Beard was making a $3,000.00 profit on the assignment of the leasehold interest for the tract of land containing the Wallace Wells; and
 
 
 16
 (vi) his personal business history or a history of his past drilling efforts.
 
 
 17
 There was no registration under state or federal securities laws of the interests in Well No. 2. Drilling commenced on December 21, 1974 and was completed on December 30, 1974. The well turned out to be a "dry hole."
 
 
 18
 The appellants mainly contend that the offers of interests in Well No. 2 were excepted from the state registration requirement by virtue of the Alabama private offering exemption. Title 53, § 38(i)[3] exempts from registration
 
 
 19
 Any transaction pursuant to an offer directed by the offeror to not more than 10 persons ... in this state during any period of 12 consecutive months, whether or not the offeror or any of the offerees is then present in this state if:
 
 
 20
 a. The seller reasonably believes that all the buyers are purchasing for investment; and
 
 
 21
 b. No commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer.
 
 
 22
 The district court concluded that this exemption was not available to the appellants because offers were made to more than ten persons and, further, Beard and Trinidad received remuneration in connection with the sale of the interests in Well No. 2. The appellants insist that the "not more than 10" criterion should be construed to limit only the number of offerees residing in Alabama. The district court agreed with the position of the Alabama Securities Commission, as elicited through the testimony of the Commission's director, Thomas L. Krebs, that the exemption applies only when the total number of offerees is less then ten.[4] However, we avoid this issue altogether, as well as its concomitant constitutional implications, because we agree with the district court's determination that the appellants received remuneration in contravention of the Alabama exemption provision.
 
 
 23
 There are two possible sources from which Beard and Trinidad could have received prohibited compensation. First, Beard realized at least a $3,000.00 profit through the mark-up of the leasehold interest. Second, and more important, Beard and Trinidad collected funds from the investors which greatly exceeded the actual costs attributable to the drilling of Well No. 2. The district court based its decision on this latter fact, crediting the opinion testimony of Krebs that the money collected in excess of the cost of the turnkey drilling contract constituted indirect remuneration under § 38(i)(2).
 
 
 24
 The appellants maintain though that these excess funds were not remuneration, but rather the type of profit to which any business corporation is entitled. This "profit," however, was certainly not disclosed to the investors. Indeed, they were expressly promised that their contributions would be used for drilling costs only. Also, the money retained by Trinidad was not a profit in the ordinary sense in that it was not derived from the operation of the business. It flowed directly from the investors to Trinidad as a consequence of Beard's efforts to solicit purchasers of interests in Well No. 2.
 
 
 25
 Another, and seemingly alternative, justification offered by the appellants for the collection and retention of excess funds is that they needed a "reserve for contingency." We do not doubt their claim that the nature of their business leaves them open to multiple contingencies, such as increases in prices, blow-outs, fires and other disasters. Yet, again, we emphasize that the existence of such a reserve was never disclosed to Upton or the other investors. Moreover, the excess amount Trinidad collected over and above the cost of the turnkey drilling contract bears no logical relation to the actual risks involved. One of the appellants' own witnesses testified that a contingency such as a major blow-out could cost the corporation as much as one million dollars. We also believe that if such a reserve fund is legitimately created, there should be some mechanism for returning the excess to the investors on a pro rata basis in cases where, as here, the contemplated contingencies do not materialize. The appellants, of course, did not refund to Upton and the other investors any of the money which they had purportedly collected for drilling costs. Rather, they apparently used the excess funds to cover the overhead expenses of Trinidad's entire corporate operation, which at that time included the administration of as many as seventeen previously-drilled wells.
 
 
 26
 In short, we find the appellants' arguments unpersuasive. We agree with the district court and the Alabama Securities Commission that the interests in Well No. 2 were not exempt from registration under state law because Beard and Trinidad received remuneration in connection with the sale of those interests. Accord, Petroleum Resource Development Corp. v. State of Oklahoma, 585 P.2d 346 (Okl. 1978); Schultz v. Rector-Phillips, Morse, Inc., 261 Ark. 769, 552 S.W.2d 4 (1977).
 
 
 27
 Because we affirm the district court with respect to the state law registration violation, the remaining issues raised by the parties are not of controlling significance. It is noteworthy that Upton's position with respect to the applicable statute of limitations for his 10b-5 claim has been vindicated by our opinion in White v. Sanders, 650 F.2d 627 (5th Cir. 1981). The alleged violations of the federal antifraud provisions are, we believe, well-proven. We express no opinion as to the applicability of the tolling doctrine to the federal registration claim.
 
 
 28
 For the foregoing reasons, the judgment of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The memorandum opinion contains no discussion of the state antifraud claim. This omission, however, does not affect the ultimate disposition of the case
 
 
 [2]
 The stipulation that the funds invested were to be used solely for drilling costs was made in contemplation of favorable tax treatment. See 26 C.F.R. § 1.612-4
 
 
 [3]
 Because Upton's claims arose prior to the adoption of the Code of Alabama (1975), the parties' statutory references are to the Code of Alabama (1940). The corresponding provisions in the 1975 Code are found at § 8-6-1 et seq
 
 
 [4]
 The securities commissions of Ohio, Arkansas and Kentucky appeared as amici curiae in support of this position