Tom LAMBRECHT, W.A. Lambrecht, Jr., Jack Seagraves and Joe D. Seagraves, Appellants,

v.

Bill BARTLETT, individually and d/b/a Bartlett Oil and Gas Company, Appellees.

No. 56375.

Supreme Court of Oklahoma.

Dec. 21, 1982.

2. E. Dwight Morgan, *Delayed Attacks On Final Judgments,* Okla.Law Review, Vol. 33, No. 1, p. 45, n. 3.

Gerald E. Durbin, II, Lisle, Patterson & Durbin, Oklahoma City, for appellants.

Gary L. Brooks, Brooks & Associates, Oklahoma City, for appellees.

BARNES, Vice Chief Justice:

During the latter part of 1978, appellant, Jack Seagraves, was contacted by C. Wayne Baker, a former business associate, regarding the sale of interests in a lease on a gas well known as Ball # 2, located in Stephens County and owned by appellee, Bill C. Bartlett, d/b/a Bartlett Oil and Gas Company. Seagraves had previously purchased from Baker interests in two other wells not related to this case. The price of a 1/64 interest in Ball # 2 was quoted as $6,100. Seagraves paid $9,150 for a 3/128 interest and informed his brother, Joe D. Seagraves, a resident of Connecticut, of the investment opportunity. Acting on this information, Joe purchased a 1/64 interest for $6,100.

Jack Seagraves also told his neighbor, Tom Lambrecht, of the investment possibility. Lambrecht and his brother, Bill, bought a 5/128 interest for $15,250.

In March, 1979, Jack Seagraves began to suspect that he and the others had been overcharged. When confronted, Bartlett admitted that the correct price for 1/64 interest was $2,500. Bartlett further stated that he had given Baker the $18,000 overcharge. After speaking with Bartlett about the situation, Jack Seagraves and the Lambrechts decided to buy additional interests in the well. Seagraves invested an additional $5,000, as did the Lambrechts.

With these purchases, the amount which Bartlett had collected from all appellants totaled $40,500. Bartlett issued assignments to Jack Seagraves and the Lambrechts (plaintiff's Exhibits 3 and 6) which purported to represent the interests they had purchased.

The appellants became increasingly disenchanted with their investments. In November, 1978, Bartlett promised to provide appellants with an accounting. No such accounting was ever made and appellants (plaintiffs) filed suit against Baker and Bartlett on March 18, 1980. The petition, filed in the District Court of Cleveland County, alleged violations of the Oklahoma Securities Act, in that the sale of the oil and gas securities was not registered with the Oklahoma Securities Commission, and that neither Bill C. Bartlett or C. Wayne Baker were registered with the Commission as an issuer, broker/dealer or agent. It was further alleged that Baker and Bartlett employed a scheme to defraud the appellants, making untrue statements of material facts regarding the sales.

Appellants were never able to obtain service on Baker and on November 19, 1980,

the case went to jury trial with Bartlett as the sole defendant. After asking the Court for explanations on several points, the jury returned a verdict for appellants in the amount of $18,000.

Although they have no quarrel with the verdict in their favor, appellants do maintain that the damages are inadequate and do not comply with 71 O.S.1981 § 408 which outlines the civil liabilities for violation of the registration and antifraud provisions of the Oklahoma Securities Act. Appellant first contends that the trial court committed error by refusing to direct a verdict for appellants at the closing of the evidence. We agree.

Because it has long been recognized that the majority of the public lacks knowledge and sophistication in the area of securities investment, the various states have enacted statutes commonly referred to as "blue sky laws." These statutes are designed to protect the public from deceit and fraud in securities transactions. This state's version of such a law is embodied in the Oklahoma Securities Act, 71 O.S.1981 § 1 et seq.

Found in 71 O.S.1981 § 2(20) is a definition of "security" which states in part:

" 'Security' means any: . . .

* * * * * *

(R) interest in oil, gas or mineral leases, except that transactions involving leases or interest therein, between parties, each of whom is engaged in the business of exploring for or producing oil and gas or other valuable minerals as an ongoing business, and the execution of oil and gas leases by land, mineral, and royalty owners in favor of a party or parties engaged in the business of exploring for or producing oil and gas or other valuable minerals shall be deemed not to involve a security."

There was no evidence introduced at trial to indicate that the sale of the interests by Bartlett to the appellants fell within the specified exceptions. Therefore, the interests sold, which are the subject of the suit, were securities, as defined by law. As au-thor Joseph C. Long states in a law review commentary, ". . . whether a particular interest is a security is a question of law to be determined by the court without aid of the jury." [1]

Once it is established that the interest which is to be offered for sale is a security, all aspects of the sale come within the purview of the Oklahoma Securities Act. One of the registration requirements is set forth in 71 O.S.1981 § 301 which states:

"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 401."

The Act also includes another registration requirement as spelled out in 71 O.S.1981 § 201(a) which makes it unlawful for any person to transact business in this state as a broker-dealer or agent unless he (or she) is registered. A quick check of the definitions found in § 2 reveals that a "broker-dealer" is any person engaged in the business of selling securities for himself or others. An "agent" is any individual other than a broker-dealer who represents a broker-dealer or issuer in purchases or sales of securities.

The trial court admitted into evidence plaintiffs Exhibit 9, an Affidavit from the Acting Administrator of the Oklahoma Department of Securities and the Oklahoma Securities Commission which states that neither Baker or Bartlett were registered as a broker-dealer or agent nor were the securities which were sold registered with the Oklahoma Department of Securities. With this Affidavit, the appellants submitted uncontroverted evidence to the court that § 201 had been violated by appellee. The Affidavit further proved that there had been a violation of § 301 *unless* the security was one which was exempted from the registration requirement.

Section 401 enumerates the exemptions and provides in part:

"(15) A. Any sale from or in this state to not more than thirty-two persons of a unit consisting of: interests in oil, gas or

1. 26 Okl.L.Rev. 160 (1973).

mining title(s) or lease(s) or any certificate of interest or participation, or conveyance in any form of an interest therein, or in payments out of production under such title(s) or lease(s), whether or not offered in conjunction with, or as an incident to, an operating agreement or other contract to drill oil or gas wells or otherwise exploit the minerals on the particular lease(s), whether or not the seller above or any purchasers are then present in the state, if:

1. the seller above reasonably believes that all buyers are purchasing for investment;

2. no commission or other remuneration is paid or given directly or indirectly for the solicitation of any such sale excluding any commission or remuneration paid or given by and between parties each of whom is engaged in the business of exploring for or producing oil and gas or other valuable minerals;

3. no public advertising or public solicitation is used in any such solicitation or sale; *and* (emphasis added)

4. sales are effected only to persons the seller has reasonable cause to believe are capable of evaluating the risk of the prospective investment and able to bear the economic risk of the investment; but the Administrator may, by rule or order, as to any specific transaction, withdraw or further condition this exemption or decrease the number of sales permitted or waive the conditions and clauses 1, 2 and 3, with or without substitution of a limitation on remuneration.

In order for a sale of an oil and gas security to be exempted from the registration requirements, all four of the elements of 71 O.S.1981 § 401(b)(15)A must be present.

In argument to the trial court following opening statements, appellee mentions a "sale to sophisticated investors." Appellee was most likely referring to subsection 4 of 71 O.S.1981 § 401(b)(15)A. The only evidence presented regarding the "sophistication" of appellants was brought out on direct examination of Jack Seagraves who admitted that he had previously purchased interests in two other wells from Baker. However, when appellee cross-examined Seagraves about his examination of a drilling log on Ball # 2 which Baker had supplied, he answered that he didn't "know anything about logs." He further stated that he relied on Baker's information because he had never before seen such a record.

Even if Seagraves could be considered a "sophisticated investor", the evidence regarding the lack of "sophistication" of two of the appellants was uncontroverted. Subsection 4 specifies sales "only to persons the seller has reasonable cause to believe are capable of evaluating the risk of the prospective investment and able to bear the economic risk of the investment." Therefore, all four appellants would have to be classified as sophisticated investors in order for the exemption to apply.

Another requirement for exemption is that "no commission or other remuneration is paid or given directly or indirectly for the solicitation of any such sale". Appellee testified that he paid $18,000 to Baker after Baker had effected the sales to appellants. This payment provides another undisputed reason that the sales in question did not qualify for exemption from registration.

Having established that the securities and sellers were not registered and that there was no applicable exemption from registration it becomes apparent that § 408 comes into play.[2] If there is no exemption

**2.** 71 O.S.1981 § 408(a) provides in part:
 (a) Any person who
 (1) offers or sells a security in violation of Sections 201(a), 301, or 404(b) of this title, . . . is liable . . .
 (i) in the case of an offer or sale of a security by such means, to the persons buying the security from him, who may sue either at law or

in equity to recover the consideration paid for the security, together with interest at ten percent (10%) per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.

from registration, the seller's civil liability to the purchaser(s) flows from the mere failure to register as required by law. The statute clearly specifies what damages can be recovered—the consideration paid with ten percent (10%) interest from the date of payment plus costs and attorney fees, less the amount of any income received.

At the closing of the evidence, appellants moved for a directed verdict. In denying the motion, the trial court ruled that there was sufficient evidence, which if believed by the jury, would result in an exemption of the registration of the securities. As indicated by the foregoing analysis, we do not agree.

In the case at bar, the evidence submitted, taken together with the stipulations of the parties and the applicable statutes, lead only to one conclusion—the appellee violated the Oklahoma Securities Act and is liable to appellants for the statutory damages. In *Johnson, et al v. Connaway,* 184 Okl. 516, 88 P.2d 338 (1939), this Court held that where the evidence is so clearly preponderant that it reasonably admits of but one conclusion, disposition of the case becomes a question of law for the court. Therefore, there is no issue of fact for the jury and the Court should direct a verdict if the appropriate motion is timely made, as it was in this case.

The trial court erred in failing to direct a verdict for appellants and assess the correct amount of damages—$40,500 with ten percent (10%) interest per year from the date of payment plus a reasonable attorney's fee and all court costs. The decision of the trial court is reversed and the case is remanded with directions to direct a verdict for the appellants and award damages in compliance with 71 O.S.1981 § 408.

LAVENDER, SIMMS, DOOLIN and OPALA, JJ., concur.

WILSON, J., concurs in part, dissents in part.

IRWIN, C.J., and HARGRAVE, J., dissent.