**PIC OIL COMPANY, INC., Dale Thompson, Dennis Parker, and Charles Walter, Appellants.**

v.

**Robert W. GRISHAM and Sharon D. Grisham, Appellees,**

No. 61539.

Supreme Court of Oklahoma.

April 30, 1985.

Rehearing Denied July 9, 1985.

C.M. Gibson and Lester D. Henderson, Sapulpa, for appellees.

Michael Schultz, Mitchell & Schultz, Sapulpa, for appellants.

DOOLIN, Vice Chief Justice.

This appeal is taken from a summary judgment in an action to rescind the purchase of undivided fractional interests in oil and gas leases in Creek County, Oklahoma.

Summary judgment was granted to Robert W. Grisham and Sharon D. Grisham ("Grisham") against PIC Oil Company, Inc. ("PIC") and the latter's sole stockholders and agents (the individual appellants Thompson, Parker and Walters).

The trial court, in granting summary judgment, allowed the Grishams to rescind the purchase of the leasehold interests because of PIC's violations of the Oklahoma Securities Act ("Act").[1] The trial court ordered PIC to restore to the Grishams the amounts paid for the leasehold interests with interest running from the date of each payment and attorney fees and costs.

There is no conflict or dispute between the parties as to the facts surrounding the solicitation and transfer of the interest. Additionally, it is not disputed that the leasehold interests and the individual appellants were not registered with the Oklahoma Securities Commission ("Commission") for the sale of the interests.

PIC relies on two points of law, as applied to the facts before the trial court to urge reversal. The first allegation of error

---

1. 71 O.S. 1981, § 1, et seq.

is in the trial court's failure to find that a question of fact existed as to whether the Grishams were engaged in the business of exploring for oil and gas on an ongoing basis. If the Grishams were engaged in such a business, it would remove the leasehold interest from the definition of a "security."[2]

The second allegation of error concerns the trial court's finding that the evidence was so clearly preponderant as to reasonably admit only the conclusion that the leasehold interests retained by PIC, at a fraction of the cost paid by outside investors, constituted indirect remuneration for soliciting the sale of securities.[3] The receipt of such indirect remuneration would deny PIC the Act's "private offering" exemption from registration.[4]

The Act defines the term security to include an "interset in oil, gas or mineral lease." Such an interest is excluded from the definition of a "security" if its sale was a transaction "between parties, each of whom is engaged in the business of exploring for or producing oil and gas ... as an ongoing business...."[5]

PIC argues that a question of fact existed as to whether the Grishams were engaged in the business of exploring for oil and gas as an ongoing business. It contends that because a question of fact exist-

ed, it was improper to grant the motion for summary judgment.[6] To buttress its contention, PIC cites the undisputed admission that the Grishams had—some four months prior to the purchase of the leasehold interests from PIC—made their only other investment in an oil and gas venture. This investment was as a limited partner in a drilling program that eventually explored some twenty well locations.

While the phrase "engaged in the business" was not specifically defined by the Legislature,[7] the term has a long established judicial meaning that must have been contemplated by the Legislature in enacting the statute on which PIC relies.[8]

As we stated in *Wilson v. Federal Tax Co.,*[9] statutory phrases such as "engaging in the business" mean:

> [D]oing or performing of a series of acts which occupies the time, attention, and labor of [persons] for the purpose of livelihood, profit or pleasure, *but the doing of a single act pertaining to one particular business will not be considered carrying on, transacting, or doing business as contemplated in the statutes.*

▮▮▮ Affidavits, filed in support of the plaintiff's motion for summary judgment, disclose that the Grishams had made only

---

**2.** 71 O.S. 1981, § 2(20)(R).

**3.** *Lambrecht v. Bartlett,* 656 P.2d 269, 273 (Okl. 1982).

**4.** 71 O.S. 1981, § 401(b)(15)(A). The statute provides:

> (b) The following transactions are exempted from Sections 301 and 402 of this title:
> *     *     *     *     *     *
> (15) A. Any sale from or in this state to not more than thirty-two persons of a unit consisting of interests in oil, or gas or mining titles or leases or any certificate of interest or participation, or conveyance in any form of an interest therein, or in payments out of production pursuant to such title or leases, whether or not offered in conjunction with or incident to, an operating agreement or other contract to drill oil or gas wells or otherwise exploit the minerals on the particular leases, whether or not the seller or any other purchasers are then present in the state if:
> *     *     *     *     *     *

> 2. No commission or other remuneration is paid or given directly or indirectly for the solicitation of any such sale excluding any commission paid or given by and between parties each of whom is engaged in the business of exploring for or producing oil and gas or valuable minerals.

**5.** 71 O.S. § 2(20)(R). See generally Boxeur, An Overview of the Oklahoma Securities Act for the General Practitioner, 51 OBJ 577 (1980).

**6.** *Wilds v. Universal Resources Corp.,* 662 P.2d 303 (Okl.1983).

**7.** Note, Oil and Gas Transactions Under the Oklahoma Securities Act—A Scheme of Investor's Insurance? 15 Tulsa L.J. 580, 588 (1980).

**8.** *Wilson v. Federal Tax Company,* 175 Okl. 90, 94, 54 P.2d 363, 367 (1936).

**9.** Id. at 94, 54 P.2d at 363 [emphasis added]

one investment in an oil and gas venture prior to the purchase of the leasehold interests from PIC. The Grishams' primary business occupation was as homebuilders. The determination as to whether a person is engaged in a business is generally a question of fact. However, the undisputed facts in this case, when viewed in the light most favorable to PIC, lead to the inescapable conclusion that the Grishams were not engaged in the business of exploring for oil and gas as an ongoing business.[10]

■ The individual appellants (PIC's co-defendants) ask this Court to find they were absolutely inexperienced in oil and gas ventures in comparison to the "experience" of the Grishams and they argue that the Grishams were in a better position to evaluate the "worth" of the drilling program than were the individual appellants. Their admission of inexperience only bolsters the trial court's finding that the leasehold interests were securities. The interests are only removed from the definition of a "security" if the sale was "between parties, *each* of whom is engaged in the business of exploring for or producing oil and gas ... as an ongoing business...."[11]

Having properly determined the interests sold were securities, every aspect of the sale to the Grishams came within the purview of the Act. A provision on the Act states:

It is unlawful for any person to offer to sell any security in this state *unless* (1) it is registered under this act or (2) the

security or transaction is exempted under section 401.[12]

One of the exemptions is for the limited offering of interests in oil and gas leases. In order to qualify for this exemption, there can be no direct or indirect remuneration for the solicitation or sale of the leasehold interests.[13]

This Court has had one occasion to interpret the provisions of 71 O.S. 1981 § 401(b)(15)(A)(2). In *Petroleum Resources Dev. Corp. v. State*,[14] we held that any payment to a promoter of an oil and gas venture, in excess of the direct and indirect costs of the exploration project, constitutes a form of indirect remuneration for the promoter's efforts to sell the leasehold interests.

In that case, the promoter was to retain any investment funds in excess of actual drilling cost. PIC asserts this case is factually different. PIC alleges it made an oral, although unfulfilled, agreement to refund any investment in excess of actual drilling costs. However, we do not view the dispute over any retained outside investments to be the dispositive factor in the trial court's ruling.

The basis of the trial court's ruling is the leasehold interests which PIC retained. PIC made a capital investment of $105,716.00 in its drilling project. This figure must be compared with the capital investment of $661,771.37 in the drilling program from outside investors. PIC has asserted claims against the outside investors, which

---

**10.** *Ross v. City of Shawnee*, 683 P.2d 535 (Okl. 1984). See also *Wilson v. Williams*, 222 F.2d 692, 697 (10th Cir.1955) ("The mere taking of title to [mineral interests and mineral leases] and the passive ownership of it did not constitute engaging in or transacting business in Oklahoma.")

**11.** 71 O.S. § 2(20)(R) [emphasis added]. The insertion of the requirement that "each" party be engaged in the business of exploring for or producing oil and gas as an ongoing business in order for sale of a leasehold interest not be considered the sale of a security was to protect the market from the inexperienced promoter. A novice will be forced to disclose, through the registration requirements, his lack of experience in oil and gas venture. The Legislature desired

to afford this protection to both the experienced and inexperienced purchaser.

**12.** 71 O.S. 1981 § 301 [emphasis added].

**13.** 71 O.S. 1981, § 401(B)(15)(a).

**14.** 585 P.2d 346 (Okl.1978). Our decision in *Petroleum Resources Dev. Corp. v. State* is becoming an industry standard for determining whether promoter compensation constitutes indirect remuneration. See *Upton v. Trinidad Petroleum Corp.*, 468 F.Supp. 330 (N.D.Ala.1979). See also Note, Securities Regulation: Hidden Danger of Indirect Remuneration and the Limited Offering Exemption in Oklahoma, 32 Okl.L. Rev. 924, 932 n. 56 (1979).

if valid, would reduce its capital investment to $91,944.63. In return for its investment, PIC retained leasehold interests greater than the combined interests sold to outside investors.

■ In determining whether PIC's retained interests constituted indirect remuneration for the solicitation or sale of the leasehold interests, we are aided by the Commission's interpretation of the disputed exemption. The Commission, under its statutory power to define terms in the Act [15], adopted the following definition in its Rule R–410(a)(1):

> The phrase "commission or other remuneration paid or given directly or indirectly for any solicitation or sale," or phrases to the same effect as used in Section 401(b) of the Oklahoma Securities Act, shall not include any amounts paid or given to the issuer or any associated person, provided in each case, that such amounts paid or given are not for the sale of a security, and provided further that the amount paid is not in excess of that which would be reasonable in light of all applicable facts and circumstances.[16]

The Commission's rule contains at least two separate concepts.[17] First, it reaffirms the statutory prohibition against remuneration to solicitors. Second, it recognizes that payment of an excessive price for the interests sold to outside investors or retention of an excessive interest can constitute a disguised sales commission.[18]

Our holding in *Petroleum Resources Dev. Corp. v. State,* is broad enough to encompass Rule R–410(a)(1) as promulgated by the Commission.

Accordingly, under the standard established in *Lambrecht v. Bartlett,* if the evidence is so clearly preponderant that it reasonably admits but one conclusion, that the retained interest is remuneration for sales effort or that the interests are in excess of what is reasonable in light of all applicable facts and circumstances, then the disposition of the case becomes a matter of law and the trial court may grant summary judgment.[19]

In an apparent attempt to invoke the protection of the "reasonableness" standard of the Commission's Rule R–410(a)(1), PIC submits the affidavits of persons familiar with drilling programs in Creek County. The affidavits support the assertion that the fees charged by PIC to outside investors and the interests which PIC retained were "customary" within the oil and gas industry. The fact something is "customary" within a given industry has never been considered the dispositive basis for the analysis of the "reasonableness" of the practice.[20]

Instead, we are guided in our analysis of this disputed issue by the holding of the Michigan Court of Appeals in *Prince v. Heritage Oil Co.*[21] Michigan, like Oklahoma, has adopted the Uniform Securities Act.[22]

In *Prince,* the defendants sold the plaintiffs fractional interests in oil and gas leases. The defendants also retained interests in the same leases. The capital contribution

---

**15.** 71 O.S. 1981 § 410(a) ("The Administrator may from time to time make ... such rules defining any terms, whether or not used in this act, insofar as the definitions are not inconsistent with the provisions of this act.")

**16.** Oklahoma Securities Comm. Rule R–410(a)(1) (adopted June 26, 1979).

**17.** Note, Securities Regulation: Hidden Danger of Indirect Remuneration and the Limited Offering Exception in Oklahoma, 32 Okl.L.Rev. 924 (1979).

**18.** *Petroleum Resources Dev. Corp.,* 585 P.2d at 484.

**19.** *Lambrecht v. Bartlett,* 656 P.2d at 271.

**20.** Cf. W. Keaton, Prosser and Keeton on Torts § 33 (5th Ed. 1984).

**21.** 109 Mich.App. 189, 311 N.W.2d 741 (1981).

**22.** See 71 O.S. 1981 § 501 ("This act shall be so construed to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation.")

of the outside investors for their leasehold interests, when compared to the capital investment of the promoter for his leasehold interest, assumed a 5 to 1 ratio. In the PIC drilling program, outside investors in the leases paid on a 7.2 to 1 ratio for their interest when compared to the capital investment of PIC for its retained interests. In computing this ratio, credit is given to PIC's claims for additional contribution from outside investors.

In *Prince,* the court stated:

We hold that the *receipt of securities by promoters for prices grossly below those paid by outside investors amounts to other remuneration.* The effect of the interests retained by the defendants was to dilute the equity paid by outside investors and to mislead plaintiffs and other investors into believing that defendants were contributing a proportionate share of capital for interests retained.[23]

The disproportionate price paid for the leasehold interests by the respective parties reasonably admits only the conclusion that PIC received indirect remuneration for its solicitation of the sale of the leasehold interest to the Grishams. Once such remuneration was paid, the sale could no longer qualify for the limited offering exemption of 71 O.S. § 401(b)(15)(A). Accordingly, the securities PIC sold must have been registered with the Commission.[24] PIC's failure to register the securities was a basis for rescission of the sale.[25] Summary judgment was properly granted.

AFFIRMED.

All Justices concur.

**23.** 109 Mich.App. at 194, 311 N.W.2d at 746 [emphasis added].

**24.** 71 O.S. 1981 § 301.

**25.** 71 O.S. 1981 § 408(a).