The STATE of Oklahoma, Appellant,

v.

Michael Jerome HOEPHNER, a/k/a Michael Jerome Hefner, Appellee.

No. O-77-539.

Court of Criminal Appeals of Oklahoma.

Jan. 30, 1978.

Andrew M. Coats, Dist. Atty., James A. Jennings, III, Asst. Dist. Atty., Oklahoma County, Warren F. Bickford, IV, Associate Gen. Counsel, Oklahoma Dept. of Securities, Oklahoma City, for appellant.

Leo Thompson, David B. Windham, Oklahoma City, for appellee.

## OPINION

### PER CURIAM:

Appellee, Michael Jerome Hoephner, also known as Michael Jerome Hefner, hereinafter referred to as the defendant, was charged with the offense of Selling an Unregistered Security, in violation of 71 O.S. 1971, § 301. At the end of the State's evidence, the defendant moved for a directed verdict of acquittal. The District Court Judge sustained the defendant's motion on the ground that the State had not established that the transaction in question involved a security. From that ruling, the State has timely appealed under 22 O.S. 1971, § 1053, ¶ 3.

The evidence at trial established that the defendant was not a registered agent with the Oklahoma Securities Commission; nor were any securities issued in the name of Hefner Enterprises registered with the Oklahoma Securities Commission. The court did not allow testimony that the defendant previously had been ordered by the Oklahoma State Securities Commission to cease and desist from the sale of securities.

Mrs. Gwendolyn Abbott, a 74-year-old retired woman, testified that the defendant had come to her home when her insurance agent came to deliver her a duplicate copy of an insurance policy. While there, the defendant asked her if she had any money on which she wanted to make more interest or income, saying that he could get her nine to eleven percent more interest than she would be able to get on a conventional savings account. The defendant then took one of Mrs. Abbott's blank checks and wrote out a check for $1,500.00 to Hefner Investment Company, and Mrs. Abbott signed the check. She testified that she thought she was investing in something which would give her more interest on her money. She said that she did not have $1,500.00 either to lend or to give away and that she just wanted to make a little money to supplement her $500.00 a month retirement income.

The check, dated September 11, 1975, was placed into evidence. Several days later, the defendant and Mrs. Abbott's insurance agent returned to her home and gave her a promissory note with a due date of September 1, 1976. That promissory note was entered into evidence. Mrs. Abbott asked for her money back, but the defendant and the insurance agent refused to return it to her and asked her to sign the promissory note, which she refused to do.

The Oklahoma Securities Act provides in 71 O.S.1971, § 301, that, "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 401," and Section

407 of the Act[1] makes the violation of Section 301 a felony. Section 2 of the Act defines a security as "any note",[2] "*unless the context otherwise requires.*" (Emphasis ours) As the trial judge sustained the defendant's motion for a directed verdict on the grounds that the State did not show evidence of a security which was required to be registered under the Act, the only issue we need deal with is whether the promissory note in question was a security which was required to be registered under the Act.

■ As this Court has held in *Sisson v. State*, Okl.Cr., 404 P.2d 55 (1964); and *Nelson v. State*, Okl.Cr., 355 P.2d 413 (1960), showing that a security is one of a class exempted from the registration requirements of Section 301 is an affirmative defense, and the burden is on the defendant to bring himself within the terms of the exemption. Therefore, we need not determine whether the note in question falls under one of the 26 exemptions for registration set out in Section 401 as the defendant never contended that it does.

There are no Oklahoma cases construing the meaning of the definition of security as "any note," but the United States Supreme Court recently quoted *Securities & Exch. Com. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), in a case construing the definition of security as an investment contract.[3] In *Howey*, the United States Supreme Court stated that the Federal Securities Acts embody a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." 328 U.S. at 299, 66 S.Ct. at 1103. So is it with the Oklahoma Securities Act.

■ Section 501 of Oklahoma's Act[4] provides that the Oklahoma Securities Act should be construed to "effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation." Therefore, we must look to other jurisdictions to formulate our definition of the phrase "any contract."

Largely because of the language "unless the context otherwise requires," or similar language in other acts, it has been held that the phrase "any note" does not really mean any note. See, *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967), in which the United States Supreme Court said that, "in searching for the meaning and scope of the word 'security' in the [Securities Exchange] Act [of 1934], form should be disregarded for substance and the emphasis should be on economic reality. . . . " (Citation omitted) Considering the concept of substance over form and the fact that there are other statutory systems to deal with usual commercial and consumer transactions, other jurisdictions have drawn the distinction between commercial notes and investment notes in determining whether or not a note shall be treated as a security. At one end of the spectrum, if proceeds are used to purchase consumer goods or services, then the note clearly has a commercial character. See, *Zabriskie v. Lewis,* 507 F.2d 546 (10th Cir. 1974), in which the test used was whether or not a transaction is of a kind for which stock is often actually given. At the other end of the spectrum, the Seventh Circuit in *Sanders v. John Nuveen & Co., Inc.,* 463 F.2d 1075, 1080 (1972), stated that "a person who seeks to invest his money and receives a note in return for it has not purchased commercial paper in the usual sense. He has purchased a security investment. . . . " (Citations omitted)

■ Whether or not a note is a commercial note or an investment note must be determined on the basis of the facts of each individual case. The commercial context of the underlying transaction has to be evalu-

---

1. Title 71 O.S.1971, § 407.

2. Title 71 O.S.Supp.1976, § 2, ¶ 20.

3. Title 71 O.S.Supp.1976, § 2, ¶ 20(K).

4. Title 71 O.S.1971, § 501.

ated. According to Martin Lipton and George A. Katz, " 'Notes' Are (Are Not?) Always Securities—A Review," 29 Bus. Law. 861, 866 (1974), summing up the existing law, state that "notes that are issued for investments and business acquisitions as well as commercial papers sold outside the normal institutional markets are securities."

In 52 Neb.L.Rev. 478, 510–524 (1972–73), guidelines which have been used by courts, to determine whether or not a note is an investment note are listed. The author suggests these criteria merely as guidelines and not as necessarily determining factors.

First, it is suggested that one look at how a reasonable businessman in the commercial world would characterize the instrument.

Second, one should look at the way the proceeds of the note are used. If the maker of the note used the proceeds to purchase consumer goods or services as opposed to using them for an essentially business purpose, then the note was a commercial note and not a security. On the other hand, if the proceeds were used for business purposes, it is then necessary to determine whether the proceeds were used to finance particular business goods or services, or were used in the general financing of the maker's enterprise. General financing is indicative of an investment note, although this determination is a matter of degree.

Third, citing *Howey, supra,* the author states that an investment of money in a common enterprise with profits to come solely from the efforts of others is indicative of an investment contract rather than a commercial contract. Subsidiary under this guideline is the question of the risk involved to the capital and the rights given to the payee. Generally, a risk to the capital indicates an investment contract, as does giving the payee the right to vote and/or to inspect the books of a corporate maker, etc. Also under this guideline, it is necessary to look at the method of repayment. Having the notes be payable in full on a definite date or in fixed installments, is an indication that the payee is merely a general creditor. However, where it is clear that repayment is contingent on the maker's

profits or is payable out of the maker's production, that is indicative that the notes are investment notes. If the notes are secured by specific collateral, that is indicative of a commercial contract. If there is no collateral security, that may indicate an equity interest, or a security, or it may reflect a general creditor's interest.

Fourth, one can often look to the number of notes issued, the number of payees to whom they were issued, and the dollar amount of the transaction. Size is often indicative of investment notes. The author of the Nebraska Law Review articles urges that using the dollar amount of the notes as a criterion is an unreliable factor, however.

Fifth, one must consider the time factor. Fixed time notes may or may not be securities, but it is unlikely that demand notes would be securities. Finally, one should look at how the parties themselves characterize the notes. In conclusion, the author of the Nebraska Law Review article suggests that where there is a "gray area" the court should look at substance over form and should resolve the question by looking at the degree of alleged fraud involved and the amount of protection which is needed by the plaintiff.

Using these guidelines, we think that the note in question was a security under the definition in Oklahoma's Security Act. According to the testimony presented at trial, the interest which the victim was to have received was indeterminate, and the victim received no goods or services for her check. Furthermore, the testimony indicated that the defendant approached Mrs. Abbott with the prospect of investing her money in order to receive a higher yield on it. All the evidence leads to the conclusion that the parties considered that Mrs. Abbott was making an investment. Finally, it appears that Mrs. Abbott was in the class of persons that the legislature was trying to protect in passing the Oklahoma Securities Act. She was an uninformed, elderly woman on a fixed income who could not afford to be bilked out of her money. In *Zabriskie, supra,* the court held that a note was a security where there was an unsophisticated in-

vestor who was promised a return of approximately 120 percent on her money. The victim had been seeking investment properties, and the money was used to promote a corporation, a function for which stock often actually is given, and the victim was not in the loan-making business, and she had not received any consumer goods or services for her money.

In the instant case, the only major difference is that from the evidence it appears that the defendant sought out the victim rather than the other way around, which in our view made the victim even more in need of protection.

█ Therefore, under the instant facts, we hold that the jury could have determined that the promissory note given to Mrs. Abbott was an investment note which should have been registered with the Oklahoma Securities Commission. Therefore, the defendant's motion for a directed verdict should not have been sustained, and the case should have been sent to the jury.

For all the reasons set out above, the question of law certified by the State to this Court, i.e., whether the State made a prima facie case setting forth all the elements of the crime of selling an unregistered security, is answered in the *AFFIRMATIVE.*