Kenneth Ray MAYFIELD, an individual; and Capps Oil & Gas, an Oklahoma general partnership, Appellees,

v.

H.B. OIL & GAS, an Oklahoma Corporation, and Howard Braymer, an individual, Appellants.

No. 62289.

Supreme Court of Oklahoma.

Nov. 3, 1987.

As Corrected Nov. 6, 1987.

Crowe and Dunlevy by Harry A. Woods, Jr., Kelley C. Callahan, Oklahoma City, for appellants.

Durbin, Larimore & Bialick by James K. Larimore, John F. Cooper, Oklahoma City, Joseph C. Long, Norman, for appellees.

Pray, Walker, Jackman, Williamson & Marlar by S. Erickson Grimshaw, Nancy C. Hanania, Tulsa, for amicus curiae.

DOOLIN, Chief Justice.

Kenneth Mayfield and Capps Oil & Gas [investors] filed an action for rescission under the Oklahoma Securities Act, 71 O.S. 1981, §§ 1–501, for sale of unregistered securities involving fractional oil and gas working interests in five wells sold by Howard Braymer and H.B. Oil & Gas, Inc., [issuer]. The parties stipulated in the trial court that this sale of undivided working interests was a sale of securities and that the securities were unregistered. The issuer raised the affirmative defense that the unregistered securities were exempt from registration under 71 O.S.1981, § 401(b)(15). The investors filed a second cause of action sounding in common law fraud that the unregistered securities were sold by means of material misstatements and omissions.

The investors filed a Motion for Summary Judgment on the grounds that: 1) the "carried interests" retained by the issuer were direct or indirect remuneration for solicitation of the sale of securities and, 2) that the issuer made sales to investors the issuer had no reasonable cause to believe were able to evaluate and bear the risk of investment, thereby failing to carry the issuer's burden of proof that the exemption under Section 401(b)(15) A applied. The trial court granted partial Summary Judgment, finding the "carried working interests" were direct or indirect commissions or remuneration for the sale of securities and that, as a consequence, the securities were not exempt from registration under Section 401(b)(15) A. No ruling was made concerning the question of whether the issuer had made sales to investors who were unable to evaluate and bear the risk of investment [Section 401(b)(15) A.4.]. The cause of action sounding in common law fraud was dismissed without prejudice.

The trial court granted rescission and awarded as damages the consideration paid for the securities, less income received, plus 10% prejudgment interest, costs and attorney fees. The trial court determined that income tax benefits received by the investors in connection with the transaction would not be deducted from the damages awarded. From this final judgment the issuer appeals.

Under this sale of working interests, the issuer retained a carried working interest[1]

---

1. A carried interest is a fractional interest in an      oil and gas property, usually a lease, the holder

and the drilling and completion costs attributable to the issuer's working interest were borne by the investors in a "third for a quarter deal".[2] One of the wells involved a standard third for a quarter deal, in which the investor received a 25% working interest in the well, but that interest carried 33% of the cost to drill and complete the well. The other four wells involved a modified third for a quarter deal with the issuer being carried for only 12.5% convertible to a 25% working interest when production from the well returned the investors' original cash investment. As a result of this arrangement in the five wells, each investor paid a higher percentage of the total drilling cost than his actual interest bore to the whole of the leasehold, and the costs associated with the issuer's interest in the wells were fully subsidized by the non-operating investors.

The issuer and the Amicus Curiae, the Oklahoma Independent Petroleum Association, assert that carried interests are reasonable and customary in the industry. They further assert that the legislature never intended that carried interests retained by issuers be considered direct or indirect commissions or remuneration for the sale of securities under Section 401(b)(15) A.2.[3] While carried interests and third for a quarter deals may be customary

in the industry, the fact that something is "customary" within a given industry is not dispositive of the "reasonableness" of a practice, particularly when weighted against the purpose of the Oklahoma Securities Act. Had this third for a quarter deal been transacted between oil and gas companies equally sophisticated and knowledgable as investors, the issuer's argument doubtlessly would have merit.[4] But the purpose of state Blue Sky Laws and the Federal Securities Act is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions and to protect unsophisticated and unknowledgable investors not able to fend for themselves.[5] Whether a particular exemption applies turns on whether the particular class of investors needs protection of the Blue Sky Laws.[6]

██ Material evidence has been submitted in this case regarding the knowledge and business skills of the parties but whether this evidence places them under the protection of the Blue Sky Law is a question of fact which has not yet been determined. If these investors were unknowledgeable and unsophisticated they are members of a class requiring protection of the Oklahoma Securities Act.

of which has no personal obligation for operating costs, which are to be paid by the owner or owners of the remaining fraction, who reimburse themselves out of production, if any. The person advancing the costs is the carrying party and the other is the carried party. 8 *Williams and Meyers, Oil and Gas, Law Manual of Terms*, 102 (1984).

2. "[T]here is a relatively "standard" arrangement among partners within the industry called a "third for a quarter" deal. The operator transfers three-quarters of the leasehold interest in a prospect to another person (or persons) in return for payment of 100 percent of the cost of drilling and, if successful, completing the test well on the prospect. For example, if the deal included three people plus the operator, each person (other than the operator) would put up one-third of the drilling cost and would receive a one-quarter interest in the well. The operator's quarter interest in the well is its reward for searching for, identifying, and leasing the prospect as well as the efforts it exerts in supervising the actual drilling and completion." *Brountas v. Commissioner*, 73 Tax Rep. 491, 496–97

(1979). *See also*, 8 *Williams and Meyers, Oil and Gas, Law Manual of Terms*, 904 (1984), and Pezold and Richey, *The "Industry Deal" Among Oil and Gas Companies and the Federal Securities Acts*, 16 Tex.Tech.L.Rev. 827, 833 (1985) [hereinafter "Industry Deal"].

3. Since amended to delete "or other remuneration" from Sections 401(b)(9) A.2 and 401(b)(15) A.2.

4. 71 O.S.1981, § 2(20)(R) removes transactions involving leases or interests between parties engaged in the business of exploring for or producing oil and gas as an ongoing business from the Oklahoma Securities Act. *See also*, "Industry Deal", supra note 2.

5. *Securities and Exchange Com'n v. Ralston Purina Co*, 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953). *See also, Hornaday v. State*, 21 Okl.Cr. 354, 208 P. 228, 230–31 (1922).

6. *S.E.C. v. Ralston Purina, supra*, note 5, 346 U.S. at 125, 73 S.Ct. at 984.

■ The burden of proving that a security is exempt from registration is upon the party claiming the exemption,[7] and all elements of the particular exemption claimed must be proven.[8] Here, the trial court found that the carried working interests were direct or indirect commissions or other remuneration for the sale of securities. The exemption from registration did not apply because the issuer failed to carry his burden of proof that Section 401(b)(15) A.2 was not breached.

■ "The prohibition against commission or other remuneration in connection with a limited offering is intended to prevent the dilution of investor's funds."[9] The issuer retained a 25% carried working interest at no capital outlay, other than his original cost to purchase the lease. The investors paid for a third of the cost of drilling and completing the well while only receiving a quarter of the production. We recently relied[10] on *Prince v. Heritage Oil Co.,*[11] from which we quote:

> We hold that the receipt of securities by promoters for prices grossly below those paid by outside investors amounts to other remuneration. The effect of the interests retained by the defendants was to dilute the equity paid by outside investors and to mislead plaintiffs and other investors into believing that defendants were contributing a proportionate share of captial for interests retained. This practice was one of the evils the securities laws were enacted to thwart by regulating the percentage of an issue which may retained by promoters, issurers, etc., and by disclosing this information to investors.[12]

■ Administrative Rule 410(a)(1) of the Oklahoma Securities Commission, provides that in each case the amount paid or given shall not be in excess of that which would be reasonable and customary in light of all applicable facts and circumstances. It is a cardinal tenet of statutory construction that statutes are to be construed to effectuate the intent of the enacting body, and that in construing a statute, the court first looks to the language of the statute. Where the language is clear and the purpose appears with reasonable certainty, there is no need to resort to rules of construction to ascertain its meaning. This same rule applies in construing administrative regulations such as the one in question.[13] Under this rule, the Court must look at this transaction and determine whether the working interest retained exceeded a reasonable fee for the services actually performed.

It is quite possible that the 25% working interest retained by the issuer at no capital outlay had the effect of diluting the investors' funds. As such, the carried working interest could constitute a direct or indirect commission or other remuneration for the sale of securities and if so the sale would not qualify for the limited offering exemption of 71 O.S.1981, § 401(b)(15) A. In that case, the securities Braymer and H.B. Oil and Gas, Inc., sold should have been registered with the Oklahoma Securities Commission and failure to register could be a basis for recission of the sale.[14]

The issuer correctly argues however that it was error for the trial court to grant summary judgment because the question of whether the carried working interests were commissions or other remuneration was a question of fact that should have been submitted to the jury.

[I]f the evidence is so clearly preponderant that it reasonably admits of but one

7. *See State v. Hoephner,* 574 P.2d 1079, 1081 (Okl.Cr.1978). 71 O.S.1981, § 401(e).

8. *Lambrecht v. Bartlett,* 656 P.2d 269, 272 (Okl. 1982).

9. Mofsky, *Blue Sky Restrictions on New Business Promotions,* (1969) Duke L.J. 273, 278 (1969).

10. *Pic Oil Co. v. Grisham,* 702 P.2d 28, 32 (Okl. 1985).

11. 109 Mich.App. 189, 311 N.W.2d 741, 746 (1981).

12. *Id.*

13. *Thompson v. Kerr–McGee Refining Corp.,* 660 F.2d 1380, 1390 (10th Cir.1981); *United States v. Ray,* 488 F.2d 15, 18 (10th Cir.1973).

14. *Pic Oil Co., supra,* note 10 at 33.

conclusion, that the retained interest is remuneration for sales effort or that the interests are in excess of what is reasonable in light of all the applicable facts and circumstances, then the disposition of the case becomes a matter of law and the trial court may grant summary judgment.[15]

We find the evidentiary material in the record here might reasonably support differing conclusions and therefore this is not an appropriate matter for summary judgment.

■ Lastly, the issuer asserts that it was error for the trial court to not deduct the tax benefits received by the investors from the damages awarded. 71 O.S.1981, § 501 requires this Court to construe the Oklahoma Securities Act so as to make uniform the laws of those states which have enacted the Uniform Securities Act and to coordinate this Act with related federal regulation. Michigan, which has adopted the Uniform Securities Act, has found that tax consequences as a result of purchase of securities sold in violation of the Act do not enter into the computation of damages under the Act.[16] In considering whether tax benefits should be deducted from the damages awarded for violation of the federal Securities Act, the United States District Court for Arizona has found they should not in *Western Federal Corporation v. Davis.*[17] Because we find the reasoning so persuasive in this opinion, we quote extensively from it.

The defendants argue that the awards of $80,000 to each of the defendants (sic) are excessive because the plaintiffs seek rescission rather than damages and therefore the judgment should restore them to their *status quo ante.* The defendants contend that the plaintiffs claimed tax deductions by reason of their investments and that these tax benefits should be considered in determining what amount is necessary to return plaintiffs to their position prior to the transaction.

While the statute mentions only "income" as a credit against the amount paid, courts have held that economic benefits such as tax deductions must be taken into account in determining what must be restored. [citations omitted].

While this Court has *considered* the economic benefits to the plaintiffs from their investments with the defendants, as required by *Austin,*[18] it concludes that the defendants should not be given any credit. Upon restoration through rescission of the funds which they invested, the plaintiffs will have to amend their income tax returns to report those funds as income under the tax benefit rule. *Mertens Law of Federal Income Tax* § 7.37. The amounts claimed as a deduction and the amounts later reported as income will wash out and the net tax benefit will be nothing. In this case, the economic benefit by way of a tax deduction, therefore, is illusory. [emphasis in the original].

. . . .

Rescission is an equitable remedy to return parties to their prior positions and to work fairness to them. It was not the defendants who gave the tax benefits to the plaintiffs. It was the Government. If the defendants were to be given a credit for the value of the use of the money, that credit would reduce the amount of income that the Government would recapture under the tax benefit rule. In effect, the reduction in the amount that the defendants would have to return would only be at the Government's expense.

The equities of this case do not run in the defendant's favor; they are guilty of violating the securities laws. Therefore, it would be improper to let them benefit in the form of a judgment at the expense of the Government. The most equitable solution to this problem of tax benefits as a credit is to not consider them at all. By

---

**15.** *Id.* at 32.

**16.** *Borovoy v. Bursar Realty Corp.,* 86 Mich.App. 732, 273 N.W.2d 545, 548 (1978).

**17.** 553 F.Supp. 818 (D.C.D.Ariz.1982).

**18.** *Austin v. Loftsgaarden,* 675 F.2d 168 (8th Cir.1982).

requiring the defendants to repay the entire amounts invested, the following would occur: the defendants would be forced to give up everything that they had received, the plaintiffs would recover everything they had paid, and the Government would be able to recapture all of the investment as income that had been deducted by the plaintiffs.[19]

In light of the reasoning above, and harmonizing the Oklahoma Securities Act with interpretation by the state and federal courts, we find it was not error for the trial court to refuse to deduct the tax benefits received by the investors from the damages awarded to them.

The decision of the District Court granting partial summary judgment in favor of the investors should be, and hereby is, REVERSED and the matter REMANDED for further proceedings.

HARGRAVE, V.C.J., and OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., concurs in judgment.

HODGES and LAVENDER, JJ., dissent.