Dear Representative Corn:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Governor's organization of his cabinet into cabinet "departments" pursuant to Executive Order 95-8 violate the provisions of the Executive Branch Reform Act of 1986 that establishes the cabinet system in Oklahoma but only authorizes cabinet area secretaries?
 2. If the use of cabinet departments is authorized by the Executive Branch Reform Act of 1986, is the creation of those departments subject to the provisions of 74 O.S. 2001, §§ 3301-3305 which limit the ability of Governors to create agencies? If so, did the creation of the cabinet departments by Executive Order when the Legislature was in session, and the failure of the Governor to submit legislation to continue operation of those departments, violate those statutes? If so, are the cabinet departments included in Executive Order 95-8 and subsequent Executive Orders inoperative?
 3. Does the Governor have the authority to name seventeen cabinet secretaries when the Executive Branch Reform Act of 1986 limits the cabinet system to "no fewer than ten or more than fifteen cabinet areas"? 74 O.S. 2001, § 10.3[74-10.3](A).
 4. Does the appointment by the Governor of a cabinet secretary who is not the head of an agency violate
74 O.S. 2001, § 10.3(B), which provides that cabinet area secretaries are to be appointed from a "position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet secretary from among the agency heads within the cabinet area"?
 5. Do cabinet secretaries have the authority to dedicate State agency staff and State appropriations or other funds available to an agency to meet the cabinet secretaries' responsibilities and expenses (other than for their own positions) as cabinet secretaries without specific approval from the Legislature?
 I. Introduction — Executive Branch Reform Act Of 1986
¶ 1 To answer your questions, it is necessary to briefly examine the Executive Branch Reform Act of 1986 ("Act"). The purpose of the Act is to "organize the various departments, agencies, boards, commissions and other entities of the executive branch of state government into a cabinet system of government in order to improve the effectiveness, efficiency and accountability of state government." 74 O.S. 2001, § 10.2[74-10.2]. The Legislature set forth the method by which this organization would be accomplished:
 A. Within forty-five (45) days of assuming office, each Governor shall create a cabinet system for the executive branch of state government. Said cabinet system shall be an organizational framework created by executive order which includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas. The cabinet system shall consist of no fewer than ten or more than fifteen cabinet areas and each cabinet area shall consist of executive agencies, boards, commissions or institutions with similar programmatic or administrative objectives; provided, one cabinet area shall consist of the Oklahoma Department of Veterans Affairs, its institutions and other executive agencies, boards, commissions and institutions which are related to veterans. The Governor's cabinet shall be in effect until the Legislature supersedes each cabinet area by providing by law for specific cabinet areas or departments, or removes by law the authority of the Governor to create a cabinet area.
 B. The Governor shall appoint, with the advice and consent of the Senate, a Secretary to head each cabinet area. The Secretary appointee for the cabinet area consisting of the Oklahoma Department of Veterans Affairs and other related veterans entities shall be an honorably discharged veteran as defined by Title 72 of the Oklahoma Statutes. A cabinet Secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area. The cabinet Secretaries shall:
 1. Advise the Governor of any policy changes or problems within the area they represent;
 2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
 3. Coordinate information gathering for the Legislature as requested.
 C. The cabinet Secretaries shall serve at the pleasure of the Governor, however, the appointment or removal of a cabinet Secretary who is also an agency head shall not otherwise affect the status of the other duties of the agency head. Whenever a Secretary position becomes vacant, the Governor shall appoint a successor within thirty (30) calendar days pursuant to the provisions of subsection B of this section. If the Legislature is not in session at the time of appointment it shall be subject to the advice and consent of the Senate upon convening of the next regular session of the Legislature.
74 O.S. 2001, § 10.3[74-10.3].
 II. Cabinet "Departments"
¶ 2 Your first question centers around Executive Order 95-8. That Order reads in pertinent part:
 I, Frank Keating, Governor of the State of Oklahoma, hereby create the Cabinet System pursuant to the authority vested in me by the Executive Branch Reform Act of 1986. Pursuant to Section 10.3 of Title 74 of the Oklahoma Statutes, it is hereby ordered:
 The Cabinet shall be comprised of the following Secretaries:
1. Secretary of State;
2. Secretary for Department of Administration;
3. Secretary for Department of Agriculture;
4. Secretary for Department of Commerce;
5. Secretary for Department of Education;
6. Secretary for Department of Energy;
7. Secretary for Department of Environment;
8. Secretary for Department of Finance and Revenue;
 9. Secretary for Department of Health and Human Services;
10. Secretary for Department of Human Resources;
11. Secretary for Department of Safety and Security;
 12. Secretary for Department of Tourism and Recreation;
13. Secretary for Department of Transportation; and
14. Secretary for Department of Veterans Affairs.
Id. The Order then designates each cabinet secretary's responsibilities "for the following executive entities or their successors," and assigns agencies to each secretary. Id. The Order then states: "It shall be the duty of each board, commission, agency or other entity of the executive branch of state government to facilitate the purposes of this Order and the Executive Branch Reform Act of 1986 and to cooperate fully with designated cabinet secretaries." Id.
¶ 3 The applicable statute states that the Governor "shall create a cabinet system for the executive branch of state government," 74 O.S. 2001, § 10.3[74-10.3](A), which "includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas." Id. (emphasis added). Further, the statute requires that "each cabinet area" consist of various entities. Id. (emphasis added). You first ask whether the organization of the cabinet system into "departments" instead of "areas" violates the Act.
¶ 4 This exact question has not been addressed before. However, analogous cases provide the answer to your question. It has been held that "[a]n inept or incorrect choice of words [in a statutory provision] will not be construed or applied in such manner as to destroy the real and obvious purpose of a legislative enactment." Wooten v. Hall, 442 P.2d 334, 336
(Okla. 1968) (citing Bd. of Educ. of Okmulgee v. State Bd. ofEduc., 200 P.2d 394, 397 (Okla. 1948)). "This same rule applies in construing administrative regulations." Mayfield v. H.B. Oil Gas, 745 P.2d 732, 735 (Okla. 1987). Under this rule the forum reviewing the language must look at the action to determine what was intended. Id.
¶ 5 Here, after setting forth the "departments" to be created, the Order notes that the secretary for each "department" is to be assigned certain designated boards, commissions, agencies or other executive entities, and directs those entities to cooperate with the cabinet secretaries and "facilitate the purposes of . . . the Executive Branch Reform Act of 1986." Exec. Order No. 95-8. Based on the above cases and the language in the Executive Order we hold that although the word "department" was used instead of "cabinet area" the result is the same, in that each cabinet secretary has certain areas of responsibility. Therefore, using the word "department" does not violate the Act.
 III. Creation Of Agencies
¶ 6 You next ask, if the use of cabinet departments is authorized, whether their creation is subject to the provisions of 74 O.S. 2001, §§ 3301-3305[74-3301-3305]. These sections deal with the creation of State agencies by the Governor, if the Legislature is not in session. Under these statutes the Governor can create an agency by executive order during the interim between sessions of the Legislature. Id. § 3303. Such order must clearly define the agency's purpose and duties, the responsibilities, qualifications and salaries of agency officials, the projected number of employees and the maximum permissible expenditures of the agency.Id. § 3304. When the Legislature convenes, the Governor must submit proposed legislation creating the agency. Id. § 3305. If legislation is not enacted, the agency cannot continue operations beyond sine die adjournment of the Legislature. Id.
¶ 7 As noted above, although the Governor used the word "department," an examination of Executive Order 95-8 reveals that use of the word "departments" was intended to create broad "areas" under which State agencies were assigned. As noted above, although the word "department" was used, the intent of the Executive Order was clearly to comply with the Act and not to create additional agencies.
¶ 8 Additionally, these "departments" are not agencies as that term is used in 74 O.S. 2001, §§ 3301-3305[74-3301-3305]. Section 3301 states that "`agency' means any board, commission, department, authority, bureau, office or other entity created with authority to make rules or formulate orders as defined in the Administrative Procedures Act." Under the Administrative Procedures Act: "`Agency' includes but is not limited to any constitutionally or statutorily created state board, bureau, commission, office, authority, public trust in which the state is a beneficiary, or interstate commission, except: a. the Legislature or any branch, committee or officer thereof, and b. the courts[.]" 75 O.S. 2001, § 250.3[75-250.3](3). If the cabinet "departments" or "areas" are not authorized to adjudicate rights and are more investigatory, they are not "agencies" as that term is used in the Administrative Procedures Act. Walters v. Okla.Ethics Comm'n, 746 P.2d 172, 176 (Okla. 1987). The duties of the cabinet secretaries are set forth in the Act: They shall
 1. Advise the Governor of any policy changes or problems within the area they represent;
 2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
 3. Coordinate information gathering for the Legislature as requested.
74 O.S. 2001, § 10.3[74-10.3](B). Based on these duties, we have previously concluded that the Act "does not create independent administrative or other authority in cabinet secretaries except such implied powers as are necessary to effectuate their advisory and information coordinating functions." A.G. Opin. 88-3, 7. Seealso A.G. Opin. 00-54, 279 (The functions of cabinet secretaries "are no more than giving opinions and performing clerical work.").
¶ 9 Therefore, as the cabinet secretaries under the plain language of the statute generally[1] are not authorized to adjudicate rights or possess other powers associated with an agency, they are not agencies. That being the case, the creation of the "departments" by the Governor did not violate the provisions of 74 O.S. 2001, §§ 3301-3305[74-3301-3305].
 IV. Number Of Cabinet Officers
¶ 10 You next ask whether the Governor has the authority to name 17 cabinet secretaries, when the Act specifies the "cabinet system shall consist of no fewer than ten or more than fifteen cabinet areas." 74 O.S. 2001, § 10.3[74-10.3](A). In interpreting a statute a reviewing body:
 [P]resumes that the Legislature expressed its intent and that it intended what it expressed. Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them. Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.
Keating v. Edmondson, 37 P.3d 882, 886 (Okla. 2001) (footnotes omitted). Here, the statute is clear: a Governor is limited to "no fewer than ten or more than fifteen cabinet areas." 74 O.S. 2001, § 10.3[74-10.3](A). Therefore, by the express terms of the statute, the Governor does not have the authority to name 17 cabinet secretaries. See Keating, 37 P.3d at 887 (in dicta, observing one restriction on the cabinet is that "the cabinet `shall' consist of no less than ten and no more than fifteen cabinet areas."). The power to alter the number of cabinet secretaries lies with the Legislature. Id.
 V. Sources Of Funding
¶ 11 In your fourth question, you ask whether the appointment of a particular person as cabinet secretary violates 74 O.S. 2001, § 10.3[74-10.3](B). Your question centers around the following language:
 A cabinet Secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area.
Id. This question has been addressed in a previous Attorney General Opinion. In A.G. Opin. 95-26, the question was whether the War Veterans Commission and the Department of Veterans Affairs had authority to pay the salary of the Secretary for Veterans Affairs under the Act. In holding those entities did not have authority to pay the cabinet secretary's salary, the Opinion quoted the above section, then observed:
 No other provision within the Executive Branch Reform Act of 1986 or other applicable law provides for the funding of the position of cabinet secretary.
 In the absence of express authority, an administrative agency is limited to such powers as are necessary or which may be fairly implied from the statute granting the express powers. Oklahoma Tax Commission v. Fortinberry Co., 207 P.2d 301, 302-3
(Okla. 1949). Under section 10.3, the position of cabinet secretary is limited to either a position funded from funds available to the Office of the Governor, or a position filled by an agency head within the cabinet area.
Id. at 57. See also A.G. Opin. 00-54, 282 (noting that the Governor has the ability to hire staff, and has a duty to pay that staff if the parties understand that the employee will be paid for work performed; therefore, he can hire a cabinet secretary, but must pay him.). The statute is clear and unambiguous concerning the sources of funding which can be used to fund a cabinet position. Keating, 37 P.3d at 888.
¶ 12 Therefore, payment of cabinet Secretaries must either come from funds available to the Governor or a position filled by the head of an agency within the cabinet area. No other source of funding is contemplated by the Legislature.
¶ 13 You inquire about a specific individual. Whether a particular person and the Governor have an agreement to be paid for labor is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 VI. Cabinet Member Support Staff
¶ 14 You last ask, whether cabinet secretaries have the authority to dedicate State agency staff and/or funds available to an agency to meet the secretaries' responsibilities and expenses, without specific approval from the Legislature.
¶ 15 As noted above, cabinet secretaries have the following express duties:
 1. Advise the Governor of any policy changes or problems within the area they represent;
 2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
 3. Coordinate information gathering for the Legislature as requested.
74 O.S. 2001, § 10.3[74-10.3](B). Also, in addition to the powers expressly given by statute, the secretaries also have by implication those additional powers "as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers."Okla. Tax Comm'n v. Fortinberry Co., 207 P.2d 301, 304 (Okla. 1949) (quoting City of Wilburton v. King, 18 P.2d 1075
(syllabus ¶ 2) (1933)).
¶ 16 It may be necessary for a cabinet secretary to utilize clerical or other services to accomplish the duties of the position, and the power to use the support staff structure already in place at the Governor's office or the agency from which the cabinet secretary was appointed could be fairly implied from the statute imposing duties on the cabinet secretaries. The extent to which such services would be needed is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 17 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Although the Governor in Executive Order 95-8 used the word "department" instead of "cabinet area" in organizing his cabinet, the result is the same: The intent was to divide responsibilities into cabinet areas and there was no intent to create departments. Therefore, using the word "department" does not violate the provisions of the Executive Branch Reform Act of 1986 that establishes the cabinet system in Oklahoma, but only authorizes cabinet area secretaries. 74 O.S. 2001, § 10.3[74-10.3].
 2. As the Executive Branch Reform Act of 1986 did not create independent administrative or other authority in cabinet secretaries except such implied powers as are necessary to effectuate their advisory and information coordinating functions, cabinet secretaries under the plain language of 74 O.S. 2001, § 10.3[74-10.3] are not agencies. Therefore, the use of the term "departments" by the Governor did not violate the provisions of 74 O.S. 2001, §§ 3301-3305[74-3301-3305].
 3. By the express terms of 74 O.S. 2001, § 10.3(A), the Governor does not have the authority to name 17 cabinet secretaries, as the statute limits the cabinet system to "no fewer than ten or more than fifteen cabinet areas." The power to alter the number of cabinet secretaries lies with the Legislature.
 4. Payment of cabinet secretaries must come either from funds available to the Governor or a position filled by the head of an agency within the cabinet area. 74 O.S. 2001, § 10.3(B). No other source of funding is contemplated by the Legislature. Whether a particular person is head of an agency within the cabinet area, or whether the Governor and the cabinet secretary have an agreement to be paid for labor is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 5. A cabinet secretary may require clerical or other services to accomplish the duties of the position,
74 O.S. 2001, § 10.3(B), and the power to use the support staff structure already in place at the Governor's office or the agency from which the cabinet secretary was appointed could be fairly implied from the statute imposing duties on the cabinet secretaries. The extent to which such services would be needed is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
DAN CONNALLY Assistant Attorney General
[1] There are instances where individual cabinet secretaries exercise some authority. For instance, the Secretary of Commerce is a member of the Native American Cultural and Educational Authority. 74 O.S. 2001, § 1226.2[74-1226.2](B)(2). The Secretary of Education operates the Office of Accountability and has responsibilities for implementing education reform as provided by the Legislature. 70 O.S. 2001, § 3-118[70-3-118](1), (6). The Secretary of Safety and Security works with the State Finance Director to disburse funds from the Firearms Laboratory Improvement Fund, 74 O.S. 2001, § 150.32[74-150.32](A), and also serves as an active member of the Oklahoma Hazardous Materials Emergency Response Commission. 27A O.S. 2001, § 4-2-102[27A-4-2-102](B). The Secretary of Science and Technology participates in the selection of members for the Virtual Internet School Pilot Program Coordinating Committee. 70 O.S. 2001, § 1210.725[70-1210.725](A). The Secretary of the Environment distributes money for the federal Water Pollution Control Act and Clean Water Act, 27A O.S. 2001, §§ 1-2-101[27A-1-2-101](A)(2), 1-3-101(C)(8); and serves as a trustee on the Oklahoma Landfill Closure Authority. 27A O.S. 2001, § 2-10-701.1[27A-2-10-701.1](C)(4). However, this does not mean that the secretaries themselves are "agencies." Rather, they are acting in the capacity of officers, often in connection with established bona fide agencies.